IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIUS GLEGHORN, RAVINDER LALSANDHU, ELDRIDGE CHERRY, AND ANTTWON CRAWFORD, <br><br> Plaintiffs, <br><br> v. <br><br> MIKA LOGISTICS INC., d/b/a MIKA MIKA TRANSPORT, INC., d/b/a AFN EXPRESS, INC., d/b/a EXPEDITE TRANSPORT, INC., and TOMASZ MIKA, individually, <br><br> Defendants. | No. 21 C 1357 <br><br> Magistrate Judge Gabriel A. Fuentes |

## MEMORANDUM OPINION AND ORDER

On November 25, 2019, Plaintiff Julius Gleghorn, a truck driver, filed suit in the Southern District of Illinois alleging that his employer, Defendant Mika Logistics Inc., subjected him to a hostile work environment and paid him less than similarly situated white counterparts based on his race (African American). On March 10, 2021, the case was transferred to the Northern District of Illinois on Defendant's motion (D.E. 59); additional parties and claims have since been added to the case. At issue now is the Third Amended Complaint ("TAC"), in which Plaintiffs Gleghorn, Ravinder Lalsandhu, Eldridge Cherry and Anttwon Crawford (collectively, "Plaintiffs") allege that Mika Logistics and newly added Defendants Mika Transport, Inc., AFN Express, Inc., Expedite Transport, Inc., and Tomasz Mika (these latter defendants are "the Newly Added Defendants") violated the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") for failing to compensate Gleghorn, Lalsandhu and Cherry at the federal and state minimum wage for each hour they were employed (Counts I and II) and for engaging in racial discrimination

against them (Counts V and VI). (D.E. 114: TAC.) In addition, the TAC alleges that Defendants are liable for the following as to all Plaintiffs: violation of the Illinois Wage Payment and Collection Act (Counts III and IV); racial discrimination in violation of 42 U.S.C. § 1981 (Counts VII and VIII); violation of the Illinois Equal Pay Act (Count IX); and breach of contract (Count X). (*Id*.) Plaintiffs also allege that Defendants committed a hate crime against Crawford (Count XI). (*Id*.) All parties have consented to this case being reassigned to the undersigned Magistrate Judge. (D.E. 64, 129.)

Currently before the Court is Defendants' Motion for Partial Dismissal of the TAC under Rule 12(b)(6). (D.E. 117: Defs.' Mot. for Partial Dismissal.) In Plaintiffs' Opposition brief, they stipulate to the dismissal of Counts I and II (the FLSA and IMWL claims) as to Gleghorn and Crawford and Counts I, II, V and VI as to the Newly Added Defendants. (D.E. 126: Pl.'s Opp'n at 10-11.) Remaining of Defendants' Motion for Partial Dismissal of the TAC is Defendants' motion to dismiss Counts I and II as they relate to Lalsandhu and Cherry ("except as those claims relate to their last week of employment") and to dismiss all remaining claims against the Newly Added Defendants. (Defs.' Mot. at 1-2; D.E. 130: Defs.' Reply at 3.)

**LEGAL STANDARD**

In reviewing a motion to dismiss based on Rule 12(b)(6), the Court "construes all allegations and any reasonable inferences in the light most favorable to the plaintiff." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (internal citations omitted). "While a complaint does not need detailed factual allegations to survive a 12(b)(6) motion to dismiss, it must allege sufficient facts to state a claim to relief that is plausible on its face." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and Seventh Circuit cases). Plaintiffs' complaint "must set forth adequate factual detail to lift their claims from mere

speculative possibility to plausibility." *Jauquet*, 996 F.3d at 807 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and Seventh Circuit cases).

## ANALYSIS

### I. The FLSA and IMWL Claims[1]

Plaintiffs allege that Defendants violated the FLSA and IMWL by failing to pay Lalsandhu at least the applicable federal minimum wage and Illinois minimum wage for each hour he was employed from August 2018 until March 2019 and from approximately November 2019 until February 29, 2020, and by failing to pay Cherry at least the applicable federal minimum wage and Illinois minimum wage for each hour he was employed from November 2018 until November 18, 2019. (TAC, ¶¶ 190-191, 197-199). Defendants argue that Plaintiffs' allegations fail to state a claim for violation of the FLSA and IMWL except for their last week of work, and they move this Court to dismiss the minimum wage claims as to every week but the last.[2] (D.E. 118: Defs.' Mem. in Support of Mot. for Partial Dismissal at 6-7; Defs.' Reply at 4.)

However, "[i]n order to comply with the requirements of *Twombly*, *Iqbal*, and [Federal Rule of Civil Procedure] 8(a)(2), a plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference *there was at least one workweek in which he or she was underpaid*." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018) (emphasis added). And Defendants here effectively *admit* that Lalsandhu and Cherry have done

---

[1] IMWL claims are analyzed in the same way as FLSA claims, although IMWL claims must be based on work performed in Illinois. *See Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, 20 C 314, 2021 WL 1212796, at *4 (N.D. Ill. Mar. 31, 2021). For purposes of this motion, Defendants agree that Plaintiffs were employed by Defendant Mika Logistics to drive Defendant's trucks. (D.E. 130: Defs.' Reply at 2 n.2.) Defendants do not dispute that Plaintiffs performed work in Illinois. (D.E. 118: Defs.' Mem. at 4.)

[2] Regarding their last week of work, Plaintiffs allege that Defendants paid Lalsandhu nothing for the 26.5 hours of work he performed the week of February 24, 2020 (TAC, ¶ 115), and that Cherry worked approximately 40 hours in his final workweek ending November 18, 2019 but did not receive any pay for those hours worked. (*Id.*, ¶¶ 130-131.)

3

just that as to their last weeks of work. Therefore, Defendants' motion to dismiss Lalsandhu's and Cherry's FLSA and IMWL claims is denied.

## II. Newly Added Defendants

### A. Federal Rule of Civil Procedure 9(b) Does Not Apply.

Plaintiffs allege that the Newly Added Defendants operate as alter egos of Defendant Mika Logistics and thus, that the claims against Mika Logistics also apply to the Newly Added Defendants. (D.E. 126: Pls.' Opp'n Br. at 9, citing TAC, ¶¶ 36-49.) Defendants move to dismiss the Newly Added Defendants from the TAC on the ground that Plaintiffs' allegations of alter ego liability must meet the heightened pleading standard of Rule 9(b) but fail to do so. (Defs.' Mem. at 8-10; Defs.' Reply at 6-8.) Contrary to Defendants' contentions, Plaintiffs' allegations that the Newly Added Defendants are alter egos of Mika Logistics do not need to satisfy the particularity requirements of Rule 9(b). "Although the Seventh Circuit has not definitively resolved this issue, to state an alter ego theory, plaintiffs typically are only required to satisfy the notice pleading standards of Rule 8(a)." *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852, 859 (N.D. Ill. 2018) (St. Eve, J.) (collecting cases within the Northern District of Illinois) (internal quotations omitted).[3]

---

[3] The case upon which Defendants base their argument for applying Rule 9(b) to the alter ego/veil piercing claim – *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 781 (N.D. Ill. 2015) – does not dictate a different outcome. In *Deschepper*, the court noted that "courts are all over the board on the issue" of whether or not to apply the Rule 9(b) or Rule 8(a) to fraud-based veil piercing arguments, and rather than determining which Rule to apply, held that "regardless of whether the court applies Rule 8(a) or Rule 9(b)'s pleading standards, the result is the same." *Id.* Defendants cite four additional cases in their reply brief in support of their argument that Rule 9(b) applies. Two of these cases are inapposite because they do not discuss applying Rule 9(b) to alter ego/veil piercing claims. *See In re Glick*, 568 B.R. 634, 657 (Bankr. N.D. Ill. 2017) (discussing Rule 9(b) in the context of fraudulent transfer claims); *Desmond v. Taxi Affiliation Servs., LLC*, 344 F. Supp. 3d 915, 922-23 (N.D. Ill. 2018) (no veil piercing/alter ego claims at issue). The other two cases Defendants cite are distinguishable because unlike the instant case, in which there are no additional claims of fraud, those unpublished cases apply Rule 9(b) to alter ego claims that were brought together with claims for fraudulent concealment and common law fraud, respectively. *See Jones v. Hoosman*, No. 05 C 2909, 2006 WL 1302524, at *2 (N.D. Ill. 2006) (considering fraudulent concealment and alter ego claims together); *New Freedom Mortg. Corp. v. C & R Mortg. Corp.*, No. 03 C

4

### B. The TAC Adequately States a Claim Against the Newly Added Defendants.

Plaintiffs' allegations against the Newly Added Defendants do, however, meet the pleading standards of Rule 8(a). Plaintiffs allege that "[u]pon information, belief, and independent knowledge, Defendant Mika Logistics, Inc., often does business under the auspices or corporate aliases of Mika Transport, Inc., AFN Express, Inc., and Expedite Transport, Inc." (TAC, ¶ 36.) Specifically, Plaintiffs allege that Defendants Mika Transport and Expedite Transport "operate[] as an alias and/or alter ego of Mika Logistics" because: they are "registered to do business at . . . the same registered corporate address for Mika Logistics" (1N550 Forest Avenue, Glen Ellyn, IL); their "corporate agent, president, and secretary" is Defendant Tomasz Mika; and "[u]pon information and belief," Defendants sometimes placed "Mika Transport" or "Expedite Transport" as a "label or decal on their trucks, instead of Mika Logistics." (*Id.*, ¶¶ 37-39, 41, 46-49.) Plaintiffs make the same allegations against Defendant AFN Express, except as to its registered place of business.[4] (*Id.*, ¶¶ 42-45.)

Furthermore, Plaintiffs allege that Defendant Tomasz Mika owned the corporate Defendants, and was "one of the individuals responsible [for] making decisions regarding payment of wages, in addition to hiring and firing." (*Id.*, ¶ 63.)[5] Plaintiffs allege that Mika tried to "shield his personal and business assets from future recoveries" by "[p]ersonally or, through his and the

---

3027, 2004 WL 783206, at *8 (N.D. Ill. 2004) (considering alter ego theory in context of common law fraud claim).

[4] In what appears to be a typo switching Mika Transport's name with AFN Express, Plaintiffs allege that "Mika Transport, Inc., is registered to do business at 1311 Howard Drive, West Chicago, IL, the same location/address where Mika Logistics, Inc. conducts its business operations/has placed its truckyard." (TAC, ¶ 44.) The parties do not mention this inconsistency, and it does not affect the outcome of this decision.

[5] Although the parties do not, the Court notes the TAC alleges that the corporate agent, president, and secretary of Mika Logistics is Tomasz Mika's wife. (TAC, ¶ 34.)

5

Mika Defendants' agents," "moving the Mika Defendants' financial assets from Mika Logistics, Inc. to Mika Transport, Inc. or corporate entities" and "transferring Mika Logistic's assets, including its trucks, to other entities in anticipation of fraudulently filing bankruptcy and/or otherwise fraudulently dissipating the company's assets."[6] (*Id.*, ¶ 183.) Furthermore, Plaintiffs allege that Mika directed Defendants to "regularly pay out significant sums to its corporate aliases/alter egos of Mika Transport, Inc., AFN Express, Inc., and Expedite Transport, Inc. . . . under the guise of paying for services provided by such entities," and that Mika "personally profits from these transactions" and "has attempted and/or is currently attempting to force Mika Logistics into insolvency artificially, in an effort to support a future bankruptcy." (*Id.*, ¶¶ 184-186.)

Illinois law governs Plaintiffs' alter ego claims, as federal courts sitting in Illinois apply "the law of the state of incorporation for veil piercing claims." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). To state a claim for veil-piercing on an alter ego theory under Illinois law, Plaintiffs must offer allegations sufficient to plead that "'(1) there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.' This requires 'something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment.'" *Jackson Ave. Subs, Inc. v. 407 Dearborn, LLC*, No. 16 C 4697, 2016 WL 4639152, at *6 (N.D. Ill. Sept. 6, 2016) (Schenkier, J.) (quoting *Banco Panamericano*, 674 F.3d at 751-52, 756).[7]

---

[6] Plaintiff's reference to "Mika Defendants" presumably refers to Defendants other than Tomasz Mika.

[7] Although "the alter ego doctrine is not a cause of action in and of itself but instead is a remedy, . . . an alter ego claim can be brought in the same complaint in which the underlying cause of action is asserted." *Jackson Ave. Subs*, 2016 WL 4639152, at *6.

The "nature of the alter ego analysis" is "fact intensive." *Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, No. 15 C 5633, 2016 WL 74682, at *3 (N.D. Ill. Jan. 7, 2016) (Ellis, J.). Several factors weigh on the question of "unity of interests," including inadequate capitalization, failure to observe corporate formalities, corporate insolvency, nonfunctioning corporate officers, missing corporate records, commingling funds, diverting assets to an owner or other entity to creditor detriment, failing to maintain an arm's-length relationship among related entities, and whether the corporation is a mere facade for a dominant owner. *Banco Panamericano*, 674 F.3d at 752. Despite the fact-laden nature of this inquiry, at the time Defendants' motion was briefed, neither party had produced any written discovery. (*See* D.E. 131: March 2022 status report.) "At this stage of the proceeding, where [Plaintiffs] have not had the chance to take discovery and all reasonable inferences must be drawn in their favor, the[y] have pleaded sufficient facts for their veil piercing/alter ego theory to survive." *Teamsters Loc. Union No. 727 Pension Fund v. Cap. Parking, LLC*, No. 19 C 837, 2019 WL 6210955, at *3 (N.D. Ill. Nov. 21, 2019) (Feinerman, J.). In *Teamsters*, as in the instant case, the plaintiffs alleged that the individual defendant owned and controlled the corporate defendants and failed to observe corporate formalities, and that the corporate defendants operated as one integrated system. *Id*. This Court agrees that at this stage of the case, such allegations in the TAC are sufficient for the veil-piercing theory to survive a motion to dismiss. The TAC "plausibly set forth allegations that provide [the alleged alter ego defendants] with sufficient notice of the claim against [them] and suggest potential unlawful motive or intent. Although discovery may ultimately prove otherwise, this is sufficient to proceed against [the defendants] on an alter ego theory at the motion to dismiss stage." *Green Demolition*, 2016 WL 74682, at *3.

7

In addition, the Court finds that Plaintiffs have sufficiently alleged that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Banco Panamericano*, 674 F.3d at 751-52. The holding in *UIRC-GSA Holdings* is instructive. In that case, similar to the instant case, the court determined that the plaintiff adequately pleaded this prong of the alter ego test by alleging that the defendants were using the fiction of their separate corporate existence to avoid their contractual responsibilities and to ensure that they avoided liability. 289 F. Supp. 3d at 859-61. *See also Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 960 (N.D. Ill. 2017) (St. Eve, J.) (holding that the "promote injustice" prong of the alter ego claim was adequately pleaded in FLSA case where the plaintiffs alleged that the defendants utilized a fictional corporate structure with multiple separately registered subsidiaries in order to limit their liability and avoid compensating their employees fairly).[8] Because Plaintiffs have adequately alleged that the Newly Added Defendants were alter egos of Plaintiffs' employer, Defendant Mika Logistics, Defendants' motion to dismiss the Newly Added Defendants from the TAC is denied.

---

[8] Although Defendants did not cite to any cases that dismissed alter ego claims under Rule 8(a)'s notice pleading standard, the Court has reviewed several such cases and finds them to be distinguishable from the case at hand. *See, e.g.*, *Sanders v. Symphony Countryside LLC*, No. 19 C 2308, 2021 WL 1103479, at *4 (N.D. Ill. Mar. 23, 2021) (holding that "at most," the plaintiff's allegations demonstrated that the defendants "maintain an ordinary corporate affiliation"); *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2020 WL 1330363, at *2 (N.D. Ill. Mar. 23, 2020) (finding corporate veil-piercing inappropriate where no allegations plausibly suggested that the two entities did not have separate personalities); *Rumick v. Liberty Mut. Ins. Co.*, No. 17 C 2403, 2018 WL 3740645, at *4 (N.D. Ill. Aug. 6, 2018) (holding that the plaintiff's allegations were not sufficient to state a claim, "particularly where she has not suggested in any way why adherence to the fiction of a separate corporate existence would promote injustice or inequity"); *Jackson Ave. Subs*, 2016 WL 4639152, at *7 (dismissing claims where the plaintiffs failed to offer allegations sufficient to plead that adherence to the fiction of a separate corporate existence would promote injustice or inequitable circumstances).

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' partial motion to dismiss in its entirety. (D.E. 117.)

ENTER:

*[signature]*

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 26, 2022**

9